# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSURE SERVICES, INC. and ANDREW SHARPE, | ) ) ) | **FILED** AUG – 1 2007 |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CIVIL ACTION** **NO. 06-CV-3306** |
| BROKERAGE PROFESSIONALS, INC. and PATRICK V. LARKIN, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                            **August 1, 2007**

Plaintiffs Transure Services, Inc., and Andrew Sharpe, a Transure employee, filed this action against Defendants Brokerage Professionals, Inc. ("BPI"), and BPI's principal, Patrick V. Larkin, alleging breach of contract and intentional interference with Transure's business relationship with Gulfstream Express, Inc.[1]  Now before the Court are Defendants' Motion for Summary Judgment,[2] Plaintiffs' responses thereto,[3] and Defendants' replies in support of the Motion.[4]  For the reasons that follow, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on the parties' diversity of citizenship and an amount in controversy in excess of $75,000.

[2] Doc. No. 21.

[3] See Doc. Nos. 23-25, 27, 31, 37-40.

[4] See Doc. Nos. 26, 28, 35, 36.

ENTERED

AUG – 2 2007

CLERK OF COURT

## I.   FACTUAL BACKGROUND

Transure is an insurance broker specializing exclusively in the procurement and placement of trucking-related insurance coverages for various risks.[5]  In January 2004, BPI, on behalf of Gulfstream, a South Carolina based trucking company, contacted Transure's Andrew Sharpe to arrange insurance for Gulfstream's trucking fleet.[6]  Sharpe presented BPI with a contract dated February 10, 2004, setting forth provisions that would dictate the relationship between Transure and BPI while Transure operated as Gulfstream's insurance provider.[7]  The contract provides in part:

> Transure Services Inc. and Brokerage Professionals, Inc. (bpi) agree to the following in respect to Gulfstream Express, Inc.
>
> Transure will use its resources to market all coverages on behalf of Gulfstream Express and will agree to pay Brokerage Professionals 5% (of the premium) for the commissions it receives from all coverages written . . . for a one time finders fee. Or Transure will pay half at the commissions received if received amount is less than 10%. . . .
>
> Brokerage professionals agrees to not attempt to obtain a broker of record letter with any company that Transure quotes for any line of coverage quoted for the 2/12/04 renewal or thereafter.[8]

Upon review of the terms, BPI and Transure executed the contract.[9]

On October 4, 2004, Amy Fedena, a BPI employee, contacted Gary Dix, an employee

---

[5] Compl. [Doc. No. 1] ¶ 7.

[6] Id. ¶¶ 12, 14, 16.

[7] Id. ¶¶ 17, 21.

[8] Id. at Ex. A.

[9] Id.  The date that BPI and Transure executed the contract is unclear because no dates appear next to the signatures. The Court will assume, however, that the parties executed the contract on February 10, 2004, or immediately thereafter.

of the Boardman-Hamilton Company, inquiring whether Boardman-Hamilton could broker trucking insurance for Gulfstream through Lincoln General, the incumbent carrier for the insurance policy brokered through Transure.[10]  Boardman-Hamilton ultimately responded that it could not write policies in South Carolina, and could therefore not assist in writing a policy for Gulfstream.[11]

On December 23, 2004, Gulfstream issued a broker-of-record ("BOR") letter to non-party Scott Insurance.[12]  Plaintiffs allege that BPI, after failing to establish a relationship with Boardman-Hamilton, assisted Gulfstream in issuing the BOR letter to Scott Insurance, an act in direct contravention to the terms of the contract as interpreted by Plaintiffs.[13]  Plaintiffs aver that BPI and Larkin were motivated by the fact that the relationship through Scott Insurance could result in greater remuneration for BPI, and accordingly assert claims for both breach of contract and intentional interference with business and/or contractual relations.[14]  Defendants, however, argue that the plain language of the contract limits BPI only from obtaining a BOR letter from Gulfstream, and because Gulfstream issued a BOR letter to Scott Insurance, BPI did not breach the contract or tortiously interfere with Transure's and Gulfstream's business relationship.[15]  After exhaustive briefing by both parties, Defendants' Motion for Summary Judgment is now ripe for review.

---

[10] Id. at Ex. C.

[11] Id.

[12] Id. ¶ 33; Defs.' Mot. for Summ. J. [Doc. No. 21], at 2.  A BOR letter is a letter from the insured entity, Gulfstream in this case, authorizing an insurance broker to place insurance on that insured's behalf with an insurance carrier.  Compl. ¶ 25.

[13] Id. ¶¶ 30, 35, 36, 38, 39.

[14] Id. ¶ 46.

[15] Defs. Mot. For Summ. J., at 2.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party."[16] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] All inferences must be drawn, and all doubts resolved, in favor of the nonmoving party.[18]

Under Pennsylvania contract law,[19] unambiguous writings are interpreted by the court as a question of law, and ambiguous writings are interpreted by the fact finder as a question of fact.[20]

---

[16] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[17] Id.

[18] Id. at 255.

[19] Neither party disputes that the contract at issue is governed by Pennsylvania state law, despite the absence of a choice-of-law provision. In diversity cases, federal courts apply the substantive law of the forum state, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1940), including the forum state's choice-of-law provisions, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Thus, Pennsylvania's choice-of-law rules apply in this case. Although Pennsylvania applies the flexible "interest/contacts" methodology to choice-of-law questions in contract cases, Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226-27 (3d Cir. 2007), where the laws of the two jurisdictions at issue are the same, there is no conflict at all, and a choice-of-law analysis is unnecessary. Id. at 230. Here, North Carolina's and Pennsylvania's breach-of-contract laws are equivalent. Compare Forrest Drive Assoc. v. Wal-Mart Stores, Inc., 72 F. Supp. 2d 576, 582 (M.D.N.C. 1999), with Ram Constr. Co., Inc. v. Am. States Ins. Co., 749 F.2d 1049, 1052-53 (3d Cir. 1984), and Regent Nat'l Bank v. Dealers Choice Auto. Planning, Inc., No. 96-CV-7930, 1999 WL 357364 (E.D. Pa. June 2, 1999). Moreover, the contacts between North Carolina and Pennsylvania in executing and performing this contract were near equal, and there appears to be no greater interest in applying North Carolina law rather than Pennsylvania law. Where the different laws do not produce different results, courts presume that the law of the forum state shall apply. Fin. Software Sys., Inc. v. First Union Nat'l Bank, No. 99-CV-623, 1999 WL 1241088, *3 (E.D. Pa. Dec. 16, 1999). Accordingly, the Court will apply Pennsylvania law.

[20] Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 n.10 (3d Cir. 1980).

A contract is ambiguous if it is "reasonably susceptible of different constructions, is obscure in meaning through indefiniteness of expression or has a double meaning." Where such an ambiguity does exist, a party may only be bound to a meaning of a term if he has reason to know of it. However, where the words of a contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.[21]

In interpreting a contract, a court must first consider the "intent of the parties as expressed in the words used in the agreement." Where the language is clear and unambiguous, the express terms of the contract will control. The court can grant summary judgment on an issue of contract interpretation if the contractual language being interpreted "is subject to only one reasonable interpretation."[22]

A court may review parol evidence when interpreting a contract only when the evidence explains, clarifies, or resolves an ambiguity.[23] Where no ambiguity exists, a court must limit its review to the intent of the parties as expressed within the four corners of the contract.

## III.   ANALYSIS

### A.   Count I: Breach of Contract

#### i.   Whether BPI breached its contract with Transure

Transure's primary claim lies in contract and alleges that Defendant BPI breached its agreement with Transure in two ways: first, by contacting the Boardman-Hamilton Company in a failed attempt to have Boardman-Hamilton replace Transure and broker Gulfstream's insurance policies; and then by subsequently assisting Gulfstream in its issuance of the BOR letter that replaced Transure with Scott Insurance. Under Pennsylvania law,

---

[21] Ardey Ins. Agency, Inc. v. Ins. Co. of Decatur, 656 A.2d 936, 939 (Pa. Super. Ct. 1995) (internal citations omitted).

[22] Atkinson v. LaFayette Coll., 460 F.3d 447, 452 (3d Cir. 2006) (internal citations omitted).

[23] Ins. Adjustment Bureau v. Allstate Ins. Co., 905 A.2d 462, 468 (Pa. 2006) (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)).

[i]n order to prove a breach of contract . . . , a plaintiff must prove five elements. These elements are: (1) the existence of a valid and binding contract to which the plaintiff and defendant[ ] were parties; (2) the contract's essential terms; (3) that plaintiff complied with the contract's terms; (4) that the defendant breached a duty imposed by the contract; and (5) damages resulting from the breach.[24]

Here, there is no dispute that a valid contract existed between the parties, but the parties dispute the contract's essential terms.

The operative language at issue is as follows:

Brokerage Professionals agrees to not attempt to obtain a broker of record letter with any company that Transure quotes for any line of coverage quoted for the 2/12/04 renewal or thereafter.[25]

It is BPI's position that this contracted-to limitation means that "BPI won't obtain a broker of record letter authorizing it to step into, and take over, the quotes that Transure secured on behalf of Gulfstream and thus obtain the commissions on premiums with which Transure properly anticipated being paid for its services."[26] Transure disagrees, however, and alleges that the plain language of the contract precludes BPI from obtaining a BOR letter with Gulfstream for any entity, not just itself.[27]

The Court agrees with Plaintiff Transure—the plain meaning of the BOR provision in the contract precludes BPI from obtaining a BOR letter with Gulfstream for any entity, not just itself. The language of the BOR provision is unambiguous, and this is the only reasonable

---

[24] Regent Nat'l Bank, 1999 WL 357364, at *4 (citing Gundlach v. Reinstein, 924 F. Supp. 684, 688 (E.D. Pa. 1996)).

[25] Compl., at Ex. A. The Court notes that "any company," when read in context, is limited to Gulfstream Express, Inc., and does not encompass any other company that Transure quotes for any line of coverage quoted for the 2/12/04 renewal or thereafter.

[26] Reply Br. in Support of Mot. for Summ. J. of Defs. [Doc. No. 26], at 8.

[27] Pl.'s Sur-Reply Br. [Doc. No. 27], at 1-2.

-6-

interpretation.  While BPI urges this Court to limit its reading of the BOR provision to include only those instances in which BPI itself obtains a BOR letter from Gulfstream, this limited reading of the provision is in direct contravention to the plain meaning of the contract.  The BOR provision sets forth that "Brokerage Professionals agrees to not attempt to obtain a broker of record letter <u>with</u> any company that Transure quotes . . . ."[28]  The operative word is "with."  "With" is defined as "a function word to indicate a participant in an action, transaction, or arrangement."[29]  Applying this definition, any act indicating that BPI participated with Gulfstream in an attempt to obtain a BOR letter on Gulfstream's behalf violates the contract.  Moreover, as suggested by Transure, the limitation "attempt to obtain" is not qualified with language such as "attempt to obtain <u>for itself</u>."  Thus, the  contract does not limit itself to those situations where BPI itself obtains a BOR letter—instead, it encompasses both the situation in which BPI itself obtains a BOR letter, as well as the situation in which BPI obtains a BOR for a third party.

There is no dispute that Transure complied with the contract.  Thus, the only remaining inquiry, other than the assessment of damages, is whether BPI breached the contract.  At least two facts are undisputed: first, BPI clearly instituted dialogue with the Boardman-Hamilton Company in an attempt, albeit unsuccessful, to obtain insurance coverage for Gulfstream's trucking fleet;[30] second, BPI independently established, without a direct request from Gulfstream, a relationship with Scott Insurance and subsequently prepared the Scott Insurance BOR letters for

---

[28] Compl., at Ex. A (emphasis added).

[29] Merriam-Webster's Collegiate Dictionary (10th ed. 2001).

[30] See Pls.' Resp. to Mot. for Summ. J., at Ex. C.

Gulfstream.[31] These uncontroverted facts alone establish that BPI attempted to obtain a BOR letter with Gulfstream. Accordingly, the Court holds, as a matter of law, that BPI breached its contract with Transure.[32] The fact that Plaintiffs have not filed a cross-motion for summary judgment does not preclude this Court from entering judgment on its own motion in their favor.[33]

### ii.    Damages

Plaintiffs assert that due to BPI's breach of contract, they have been damaged financially because they no longer receive premiums on Gulfstream's insurance policies. The Court recognizes that Plaintiffs have been damaged, but the assessment of damages is an issue of fact for a jury to decide. Accordingly, a trial will be held in this case on the limited issue of damages.

### B.    Counts II and III: Intentional Interference with Business and/or Contractual Relations

Pennsylvania courts, following the Restatement (Second) of Torts, define the tort of intentional interference with existing contractual relations as:

One who intentionally and improperly interferes with the performance of a contract

---

[31] See id. at Ex. D; Lewis Dep. [Doc. No. 31-3] 185:9-186:19, Feb. 27, 2007.

[32] The Court notes Defendants' argument that the BOR-letter provision is a voidable restrictive covenant. The Court disagrees. "It is only where the sole object of both parties in making the contract is to restrain trade or control prices that the covenant will be declared void." Volunteer Firemen's Ins. Servs., Inc. v. Cigna Prop. & Cas. Ins. Agency, 693 A.2d 1330, 1337 (Pa. Super. Ct. 1997). Neither restricting trade nor controlling prices was the sole object of the parties. Rather, the object of the provision was to protect against BPI circumventing the unique insurance services that Transure was able to provide for Gulfstream. The Court further notes, however, that the restrictive covenant here appears infinite in duration, and where the court finds that a restrictive covenant is overly broad but the party seeking its enforcement is clearly entitled to some protection, "the trial court has the power to grant only partial enforcement of the restrictive covenant." QVC, Inc. v. Starad Inc., No. 03-CV-5298, 2005 WL 742500, at *7 (E.D. Pa. Mar. 31, 2005) (citing QVC, Inc. v. Tauman, No. 98-CV-1144, 1998 WL 156982, at *2 (E.D. Pa. Apr. 3, 1998)). The Court will reserve judgment on the duration of this restrictive covenant, but BPI's ability to challenge the duration of the restrictive covenant is preserved and should be the grounds for a pretrial motion so that both parties may fully brief the issue.

[33] DeFelice v. Philadelphia Bd. of Educ., 306 F. Supp. 1345, 1348 (E.D. Pa. 1969), aff'd, 432 F.2d 1358 (3d Cir. 1970).

(except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss to the other from the third person's failure to perform the contract.[34]

"Proper" conduct, while imprecise, encompasses conduct that society sanctions as part of the "rules of the game."[35] It is "socially accepted" conduct.[36] Thus, in order to prevail on a claim for interference with contractual relations, the plaintiff must plead and prove four elements: (1) the existence of a contractual relation; (2) the defendant's purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or justification on the part of the defendant; and (4) damages resulting from the defendant's conduct.[37] Of these elements, the one of threshold importance is intent.[38]

Contract actions lie for breaches of duties "imposed by mutual consensus agreements between particular individuals," while tort actions lie for breaches of duties "imposed by law as a matter of social policy."[39] Where a defendant's breach of his contract with the plaintiff only incidentally affects the plaintiff's business relationships with third persons, an action lies only in contract.[40] In other words, a tort claim prevails only if the contract is collateral to conduct that is

---

[34] Binns v. Flaster Greenberg, P.C., 480 F. Supp. 2d 773, 778 (E.D. Pa. 2007) (citing Restatement (Second) of Torts § 766 (1965); Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978)).

[35] Id. at 779 (citing Adler, Barish, 393 A.2d at 1184).

[36] Id.

[37] Gundlach v. Reinstein, 924 F. Supp. 684, 693 (E.D. Pa. 1996).

[38] Prudential Ins. Co. of Am. v. Stella, 994 F. Supp. 318, 322 (E.D. Pa. 1998).

[39] Etoll Inc. v. Elias/Savion Advertising Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

[40] Stella, 994 F. Supp. at 322 (internal citations omitted).

primarily tortious.[41] To permit a promisee to sue his promissor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well settled forms of actions.[42]

The gist-of-the-action doctrine guides this analysis. In Pennsylvania, "the gist of the action doctrine precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship."[43] "The doctrine is designed to maintain the conceptional distinction between breach of contract claims and tort claims . . . [and] preclude[s] plaintiffs from recasting ordinary breach of contract claims into tort claims."[44] A breach made because the defendant thinks he has made a bad bargain, even though intentional, does not support a tortious-interference claim.[45] Moreover, a breach of a duty not to compete imposed by contract does not support such a claim.[46] It is not enough to show that the defendant should have foreseen that its breach of contract would cause plaintiff to lose business.[47] Otherwise, virtually every breach of a commercial contract to supply a plaintiff with a needed product, component, or service would

---

[41] Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001).

[42] Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964).

[43] Chemtech Int'l, Inc. v. Chemical Injection Techs., Inc., 179 Fed. Appx. 805, 808 (3d Cir. 2006) (not precedential) (citing Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. Ct. 2005)).

[44] Bash v. Bell Telephone Co., 601 A.2d 825, 829 (Pa. Super. Ct. 1992).

[45] Davis v. Camp Trails Co., 447 F. Supp. 1304, 1310 (E.D. Pa. 1978).

[46] Strategic Learning, Inc. v. Wentz, No. 05-CV-0467, 2006 WL 3437531, at *6 (M.D. Pa. Nov. 29, 2006) (citing Chemtech Int'l, Inc., 179 Fed. Appx. at 808-09).

[47] Valley Forge Convention Ctr. v. Visitors Servs., Inc., 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998).

support an intentional-interference claim.[48]   But where the underlying motive is purely malevolent—that is, when done with a desire to do harm to the plaintiff for its own sake—the elements of the tort are satisfied.[49]

Here, there is no basis for either of Plaintiffs' claims for intentional interference with business and/or contractual relations.  First, but for the BOR-letter provisions in the contract, Defendants' conduct in assisting Gulfstream in finding a new insurance broker was appropriate.  Hence, Plaintiffs' tort claims are not collateral, but rather, are directly related to Plaintiffs' breach-of-contract claims.  Second, Plaintiffs' sole allegation related to their claims for intentional interference with business and/or contractual relations is that Defendants' intent in undermining the relationship between Transure and Gulfstream was to find a better deal with another insurance provider.  As noted above, a breach of a duty not to compete that is imposed by contract does not support a tortious-interference claim, and a contractual breach made because the defendant thinks he has made a bad bargain, even though intentional, does not support a tortious-interference claim.  Accordingly, Plaintiffs cannot—on these facts—support claims for tortious interference such that a reasonable jury could find for them, and the Court will therefore grant summary judgment in favor of Defendants and against Plaintiffs on Counts II and III.

## IV.   CONCLUSION

The Court holds, as a matter of law, that Defendant BPI breached its contract with Plaintiff Transure.  The damages related to this breach are a factual matter still in dispute.  Therefore, the Court will grant summary judgment on Count I in favor of Plaintiff Transure and against

---

[48] Id.

[49] Davis, 447 F. Supp. at 1310.

-11-

.

Defendant BPI with respect to liability only.  Summary Judgment on Counts II and III, however, is

granted in favor of Defendants and against Plaintiffs, because Plaintiffs have not met their burden

of production such that a reasonable jury could find that tortious interference with business and/or

contractual relations occurred.  A jury trial will be held to assess the damages associated with Count

I.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSURE SERVICES, INC. and<br>ANDREW SHARPE,<br><br><br><br>Plaintiffs,<br><br>v.<br><br>BROKERAGE PROFESSIONALS, INC.<br>and PATRICK V. LARKIN,<br><br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION<br>NO. 06-CV-3306 |

## ORDER

AND NOW, this 1st day of August 2007, upon consideration of Defendants' Motion for Summary Judgment [Document No. 21], Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment [Document No. 23] and supporting Affidavits [Document Nos. 24-25], Defendants' Reply Brief in Support of Motion for Summary Judgment [Document No. 26], Plaintiffs' Sur-Reply Brief [Document No. 27], Defendants' Supplemental Brief [Document No. 28], Plaintiffs' Supplemental Brief [Document No. 31], Defendants' Supplemental Reply Brief [Document No. 35] and attached Exhibits [Document No. 36], Plaintiffs' Supplemental Brief in Response to Supplemental Brief of Defendants [Document No. 37], and Plaintiffs' Affidavits in Opposition to Defendants' Motion for Summary Judgment [Document Nos. 38-40], it is hereby

ORDERED that Defendant's Motion for Summary Judgment [Document No. 21] is GRANTED IN PART and DENIED IN PART as follows:

1.    With respect to Count I (breach of contract), Defendants' Motion is DENIED. The Court, however, on its own motion, GRANTS Summary

Judgment on Count I in favor of Plaintiff Transure Services, Inc., on liability only.

2.     With respect to Counts II and III (intentional interference with business and/or contractual relations), Defendants' Motion is **GRANTED**, and judgment is entered in favor of Defendants' Brokerage Professionals, Inc., and Patrick V. Larkin.

A jury trial will be held on the limited issue of damages associated with the breach-of-contract claim in Count I. All pretrial filings shall be made in conformance with the deadlines set forth in the Court's November 30, 2006 Scheduling Order [Document No. 17].

It is so **ORDERED**.

**BY THE COURT:**

CYNTHIA M. RUFE, J.